May I proceed? Your Honors, may it please the Court, my name is Aaron Gold and I represent the appellants in this case. If I may reserve two minutes for rebuttal. Your Honors, we ask that this Court reverse the District Court's decision for two reasons. The first is which is that the appellants are likely to succeed on the merits of their claim that the enforcement of Las Vegas Ordinance 6320 violates their rights to free speech under the First Amendment. And secondly, because the appellants have been able to demonstrate the other three elements necessary under the Winter Test for the grant of a preliminary injunction. And Your Honors, the appellants are likely to succeed on the merits, first and foremost, because the City of Las Vegas has not asserted a credible substantial interest to justify this commercial speech restriction in this case, either as limiting the consumption of alcohol generally or as packaged liquor specifically on Fremont Street. If you look to the way that the City of Las Vegas uses numerous open-air bars and walk-up windows on Fremont Street, it allows draft liquor and draft beer and mixed liquor drinks to be sold at any size and potency and allows for individuals to walk around Fremont Street with open containers that are not of packaged liquor forms. Is there a distinction between being able, for instance, to buy a quart of whiskey or a pint and being able to have multiple drinks from that, prepare, have multiple drinks from that, and going to a tavern and buying one drink at a time where a bartender sees you and if you're drunk or out of control, he can not sell you another Manhattan or whatever, whereas once you get that pint of Jack Daniels, the customer has that pint of Jack Daniels and he can continue to pour drinks for himself, irrespective of whether he should be drinking or not. Well, Your Honor, that speaks to two things. First is that that is a form of speculation and conjecture, and that doesn't... Oh, no, I can tell you out of experience. Well, Your Honor, according to Las Vegas, excuse me, Nevada Statutes 369.630, individuals who sell alcohol even at other locations, such as not other bars, also have to undergo training to be alcohol management and understand alcohol safety requirements. That's a point, but at a packaged store, you can get the fifth or the pint, right? And it's a quart and everything, and you can't drink it there, and you can't drink it in the malls. So ostensibly, if you want to open it up, you're going to have to get off that area or go up to your hotel room or something and fix yourself a drink, right? Precisely that, Your Honor, that is the case, because it's illegal to consume alcohol in a container, in a glass container or... Why isn't that something that is legitimate for the city to have an interest in, to try to cut down alcoholism and people being drunk on that mall? Well, Your Honor, in the abstract, that certainly is a compelling interest, excuse me, a substantial interest, but the way that the city treats alcohol in this context, it undermines that interest. It promotes alcohol consumption on Fremont Street. If Your Honors would look to Las Vegas City Ordinance 6050-285, it allows for walk-up bars and open container consumption of alcohol on Fremont Street. Sure, but the city council, in considering all this, heard a fair amount of testimony that it was the packaged liquor that was causing the problem. And I know your clients dispute that and maybe it's disputable, but there was evidence, at least before the city council, that this was a particular problem. True? Well, Your Honor, most of the evidence that was put forth in those hearings had to do with conclusory allegations by individuals who came before the city council, and they didn't provide a basis by which to distinguish the effects of packaged liquor has on public overall public intoxication or littering or crime. Well, sure, it was a public hearing, and your clients made some, people on their behalf made some conclusory statements, too. It was not intended to be an evidentiary hearing. These are people giving their anecdotes about it. But there was, essentially, there were some, if you treat it as evidence, there were statements made that would support the city's eventual ordinance. Would you agree with that? There are statements that are positive in support of the ordinance, but most of those statements came from individuals who do represent gaming commissions and do represent restaurants in Fremont Street. And they also, those people, do have an interest in seeing packaged liquor consumption and sales reduced on Fremont Street, Your Honor. Do we look at the motives by which the city, acting as a legislative body, decides to make up their policies and their rules? I mean, that's not a, that's a different function ordinarily. If, you know, if we respect their findings, that's what they came to. Just like Congress, people testify before Congress that have motives, different motives, and, you know, they either had some evidence there or they didn't have some evidence. But I don't really look at the motives. Well, Your Honor, it's not about questioning the motives, but part of the commercial speech analysis under Central Hudson is demonstrating that the harms that the city claims it's addressing are real. And if it's going to target packaged liquor specifically, it needs to demonstrate a basis to distinguish between packaged liquor. And the things that people said at those hearings, either the first one in 2013 or, again, in 2014 when this ordinance was being formulated, they just made, again, they say that packaged liquor's a problem, but they don't say why. And they don't provide a reason for it. They don't provide a basis to show this is why packaged liquor is significantly causing the problem versus alcohol or drinks that were purchased at a bar or a restaurant and causing public drunkenness in that respect. And, Your Honors, that speaks, again, to and related to the third prong of the Central Hudson test, which needs to show that there was direct and material advancement of the city's interest. So if the city has been able to demonstrate a substantial interest in reducing packaged liquor consumption on Fremont Street, it has to show that it will do so in a direct and material way. And that marginal or simple, you know, marginal or incremental support for that is just not enough. JUSTICE SCALIA. Well, do they have to solve the problem, or can they just reduce the problem? In other words, if it's not a perfect solution, if there are other contributors, is that other things that contribute? MR. CLEMENT. Your Honor, it doesn't ‑‑ JUSTICE SCALIA. Why can't ‑‑ that's not enough, is it, that the solution isn't perfect, that there's other ‑‑ that there's other causes of people being intoxicated on that mall? MR. CLEMENT. Your Honor, that's ‑‑ they need to show that it would directly and materially advance the interest. But part of the analysis is looking to the overall regulatory scheme that exists on Fremont Street, and not just the specific ‑‑ and not just the specific measure in general. The Supreme Court has noted that when the city's regulatory scheme allows for the perpetuation of harm that it seeks to avoid, that undermines the rationality of the interest that the city is claiming to assert. These regulations do not affect bars and restaurants and casinos who are advertising draft liquor ‑‑ excuse me, draft beer or any sort of liquor in a mixed drink that they can sell at just about any size that they want to an individual on Fremont Street. And that just goes to show that there are other ways that the city could advance this particular interest, and they did so in a way that was more restrictive than necessary. MR. MCGILLIVRAY. We're here on a preliminary injunction, which is different from the ultimate merits of the case. As I read the record, there was no evidentiary hearing, true? MR. CLEMENT. Yes, Your Honor. MR. MCGILLIVRAY. So in contrast, say, to the 44 Locomart case that the Supreme Court had, they were reviewing a full evidentiary record with findings of fact issued by the district court, correct? MR. CLEMENT. I believe so, Your Honor, yes. MR. MCGILLIVRAY. So I recognize and appreciate your argument about the city's ultimate burden, but it's your burden on a preliminary injunction to set forth the evidentiary basis to obtain one, right? MR. CLEMENT. Yes, Your Honor. MR. MCGILLIVRAY. So how are we supposed to evaluate that in the course of this particular case when we really don't have a record other than the statements made before the city council? MR. CLEMENT. I believe, Your Honor, we can look to the other cases in which the Supreme Court evaluated the commercial speech restrictions, and these include Lorillard Tobacco, Florida Bar v. Wentford, Inc. These cases, you know, there were evidence in the record that was credible demonstrating that the problems in those cases were real and that it provided an ability to infer that reducing those particular activities would, in fact, advance the interests in a direct and material way, such as evidence from unsolicited complaints that weren't at, you know, hearings for, you know, Pope and city council meetings, newspaper editorials. Those sorts of things were available in those cases. And the lack of such supporting evidence in this case speaks to the fact that this allows for the inference that this does not directly and materially advance the State's interest, excuse me, the city's interest in a way that would be sufficient to infringe upon the commercial speech rights of the appellants. And it's also important that they do — that there are numerous and obvious less restrictive means available for the city to attack this — this interest, to attack this interest and reduce problems flowing from alcohol consumption on Fremont Street. They can place their own signs on public property. They can increase enforcement of the actual violations. And it's important because, as the Supreme Court said in Thompson v. Western State Medical Center, that if the first — if the First Amendment is to mean anything, it means that the restriction on speech needs to be the last resort, not the first resort. And not only does it speak — the appellants likely to succeed on the merits, but they also are suffering irreparable harm at this time since they cannot use their most potent tool of advertising, which is to show that their price is relative to other prices on Fremont Street, to attract customers. And not only are they losing revenue based off the loss of customers, but they've lost goodwill of — of potential consumer base. And the balance of equity — So — so where is that on the record? Your Honor, that — that's not specifically stated in the record, but the city would, I believe, have to concede that this would diminish demand at their locations, because otherwise why have the — the regulation at all? Now, the price — that price prohibition, is that — that's the one on the front window? I mean, they can have prices — can they advertise away from that window or — Your Honor, there cannot be a — a price advertisement that is visible to anyone outside of the establishment. That's right. So they — they're — So it's got to — but they can have those inside the store, right? Indeed. Yes, sir. But they've lost their most potent tool available to them to propose a transaction to a passerby on the street — on — on Fremont Street Experience Pedestrian Mall. And without that, they're — they're hampered in their ability to attract further customers, Your Honor. I mean, your — your point is, counsel, that the city wouldn't have restricted the advertising if it didn't work. Yes, Your Honor. If — if it wouldn't — if it wouldn't reduce demand at the — the locations where they imposed the restriction, they couldn't — it would make absolutely no sense to do so. But it's not that that would reduce packaged liquor consumption or even alcohol consumption in the aggregate, but only in — would it only impede the ability of these particular stores to advertise to their customers. They haven't shown in the record that this would directly and materially reduce the overall consumption of packaged liquor on Fremont Street or of other forms of alcohol on Fremont Street or any of the attendant problems that flow from the overconsumption of alcohol. So, counsel, as I understand your argument today, because you are getting close to your time where you want to reserve, is that, first, when you look at the substantial interest under Sect. 2 of Central Hudson, the substantial interest is not that strong here because there's not an absolute ban on alcohol on Fremont Street. In fact, there's open drinking, but it's just banning a certain form of it, I think, is what you're saying, correct? Yes, Your Honor. And then as to the next two points of Central Hudson, your point is that here there are other means to deal with problems of intoxication on Fremont Street other than restricting speech. Yes. Yes, Your Honor. Those — there are numerous other means available, and the only one that the City — the only one that the City considered, at least from the record, was directly enforcing packaged liquor violations on Fremont Street, but it didn't engage in any substantive consideration of that particular avenue other than to say that it would be a deterrent for some pedestrian traffic, and then just quickly dismissed it. It didn't reasonably calculate the overall effects of that versus the other options that were available to it in order to find — to demonstrate that this was narrowly tailored and a reasonable fit to the claimed interest in this case. And, Your Honors, I would like to speak that it is — it does serve the public interest for the appellants to be able to advertise in this fashion because, as the Virginia Board of Pharmacy, that the public's need to access accurate commercial information is just as keen, if not keener, than access to other forms of information because it helps them accurately and intelligently make purchases with their limited resources, and there's no vice exception to the First Amendment that makes — that cheapens the public's interest at all in the accurate receipt of information about alcohol prices. If Your Honors do not have any further questions, I'd like to reserve my time for rebuttal. Thank you, Counsel.  Thank you, Counsel. Any further from the City? Thank you, Counsel. May it please the Court, my name is Brad Jerby Capiro, on behalf of the City of Las Vegas, with Jeff Dorettak from the City Attorney's Office. I am listening to arguments this morning, Your Honor. I'm prepared to submit it on the brief, so unless you have any questions. No, I have a few, if we could just start there. I'm trying to understand in the City of Las Vegas if a mini-mart — I'll call these things mini-marts — if a mini-mart in front of it with a sign that says, Bud Light, 12-pack, $3.99, with an arrow pointing to the store, can they do that under the ordinance? This ordinance does not prohibit that. So that would be okay? It talks about window advertising, it talks about prices, it talks about what you can see from the window. It does not talk about advertising standing in the mall with a sign. So if someone were just outside of the store, outside the window holding a sign, that would be okay? It would not be prohibited by the ordinance. Would it be prohibited by any other laws? Not that I can think of. Okay. A couple other questions I have. There seems to be some disagreement between the parties as to who can actually sell packaged alcohol in the Fremont Street area. Can you, just from the City's perspective, can you tell us — we know the mini-marts can sell packaged liquor. Who else near Fremont Street can sell packaged liquor? If you have a tavern license, you can sell packaged liquor. So if you are — a tavern is a bar, and most hotel casinos have bars inside, so they have the right as a matter of law to have a packaged liquor license along with it. If you have a souvenir store or a like store on Fremont Street, you can apply for what's called a special use permit. And if the council grants you a use permit, which means the use is harmonious and compatible with surrounding land uses, then you're able to sell packaged liquor. Are there any advertising restrictions on the non-mini-marts that can sell packaged liquor? Anybody who sells packaged liquor is subject to the advertising restrictions in the Ordinance. So that doesn't just apply to the packaged liquor establishments. It applies to anybody selling packaged liquor. All right. So I want to be clear about this, because assuming there's an opinion in this case, this is obviously a representative of the City of Las Vegas making a statement. So to be clear, that for anyone selling packaged liquor, they cannot advertise the price near Fremont Street. Correct. Okay. Okay. So we'll have like this happens to involve souvenir stores. There's grocery stores that have this permit, right? They also cannot. If we had one on Fremont Street and they had this kind of license, they would not be able to advertise. That's correct. At least not be able to advertise outside the limits of the Ordinance. Yes. So if you had a Walgreens or something like that and it got a license to be able to sell some stuff, they would be subject to the same restrictions. One of the things I'd like to point out is under our statutory scheme, this is an ancillary use if you get a use permit. Under our zoning code, as an ancillary use, you can't have more than 10% of your floor space devoted to liquor. And so when we looked at the advertising restriction, we looked at that and we thought to ourselves, if you can't have more than 10% of your floor space, why should you have more than 10% of your window space? If this is a liquor store, then it should have a liquor store license. This is not a liquor store. This is a souvenir store with a license for an ancillary use. But yet they have become liquor stores. And in becoming so, they've contributed to a tremendous problem on Fremont Street. And the evidence is in the record. What we are trying to attack is the sale of hard liquor, the advertising and promotion of hard liquor at very cheap prices, and the problems that come with it. Counsel, let me tell you the problem I'm having. Help me reason through this. The Supreme Court cases that your opposing counsel has cited uniformly say that if you're trying to attack conduct, the way you attack conduct is through conduct restrictions, not speech restrictions. And there's the New Orleans case, I think, that I read it has a, for your position, has some tough language for you guys to overcome. Can you speak to why the restrictions that counsel has offered, cracking down on intoxication on Fremont Street, cracking down on underage use of liquor, cracking down on the consumption of packaged liquor, why that's not the more direct way to deal with this issue as opposed to a speech restriction? It's a very good question. I think that one, let's just talk a little bit from a conduct point of view. The city of Las Vegas could make a decision with the police department to crack down on anybody consuming packaged liquor in a packaged liquor store, or it can crack down on somebody consuming it within a thousand feet of its sales. Both of those things are prohibited. Both of those things lead to tourists coming to Las Vegas and not coming back. The fact of the matter is many people come to a city and they don't know the law. If I come to San Francisco, I don't necessarily know the law with respect to consumption within, you know, a 7-Eleven to like 50 feet, 100 feet, 1,000 feet. I don't know. And so when people come to Las Vegas, they come to be entertained. They come to have a good time. And so we put a lot of burden on the packaged liquor store owners to establish rules and regulations that inform the patrons as to what's legal and what's not legal. And in this case, that's part of our ordinance here. We have signs inside saying you can't consume it within 1,000 feet. Your Honor, we have people in packaged liquor stores opening the liquor in the stores and giving it to the tourists. It's not just a matter of cracking down on the tourists. It's a matter of cracking down on their own security staff. But that doesn't concern the advertising restrictions. I mean, I think my question here is that can you cite a case where the First Amendment, there is some sort of balancing versus city resources or a city resource exception to the First Amendment or tourists won't like their trip to Fremont Street, that type of exception to the First Amendment? No, I actually think the Central Hudson case addresses that. I think that you do that balancing test. You use the least restrictive means possible. Let's face it. If we wanted to use the most restrictive means possible, we would revoke their use permits. We didn't do that. We could do that right now. We decided to try and make this work with reasonable restrictions that would let packaged liquor establishments behave as packaged liquor establishments, not liquor stores. That's why we did what we did. But again, I still don't know. Again, the Supreme Court talks about targeting conduct versus speech. What's wrong with targeting the conduct of intoxicated people on Fremont Street? Why not simply cite those people or cite people drinking packaged liquor? We could. We could. So if you could, if that's right, then isn't this case over? No, I think here's the problem. If you wanted to arrest or cite every individual on Fremont Street, the amount of police that it would take to police the pedestrian mall to do that, six packaged liquor stores alone produce hundreds and hundreds and hundreds of people consuming packaged liquor in the pedestrian mall. We would have police out there doing nothing but citing people for drinking. And that's just unrealistic. Well, it seems to me you've got, well, two things. Are you aware of a lack of police balancing test for the First Amendment? Any case law that would support that? Then the other question I had is that in this situation where you have this problem with packaged liquor, and I hear what you're saying, the difference between packaged liquor and open cup liquor. I do see why the city would treat them differently. But it seems to me you could just simply ban packaged liquor. Now, that might not be what they want. Crazy Eli, that might be crazy. But the fact is that in terms of the First Amendment, that wouldn't get involved in speech restriction. So why aren't there, why not simply just ban, if packaged liquor is as bad as the people said it was, why not just ban it? That was an option for the city council. And they decided before going that far to try and take some intermediate step that would allow individuals who go to hotel rooms that want to bring booze to the room, not drink it on the street, who don't want to pay a higher price at a bar to be able to do so. Most cities allow that. Most cities have the ability to go outside the commercial area, the tourist area, buy liquor, bring it to your room. And that's why these licenses exist in the first place. And so an individual has that option. And when that option turned into consumption right outside the store or even in the store, that's when the council said we need to step in and try and stop it. And that's why we took this intermediate step of restricting the sales, restricting the square footage, restricting the advertising. There's plenty of evidence or testimony before the city council about the problem of packaged liquor. There's not much about advertising. So tell me what's in the record that would support the notion that removing the advertisement from the outside of the store has anything to do with the consumption of packaged liquor on the Fremont Street experience? I looked at that and I kind of anticipated that question. I know that there is not as much in the record as I would like to have seen. But there are some references in the record to a couple of stores that literally no longer advertise themselves as souvenir stores. They say Bud Light outside. It looks like a liquor store. That's in the record. There are videos which you can't see that were played before the city council that had signage in front of the stores advertising the enhanced alcohol beer and things of that nature at a very, very low price. There were evidence in the record of individuals who were buying from these stores that were literally panhandling outside until they got just enough money to buy some hopped up beer or to buy a couple of pints or buy whatever it was. And so I think there was a nexus between the advertising Well, there's no question that there's that stores were advertising. But I'm just saying what was before the city council about the nexus between advertising and consumption? Just what I stated on the record, Your Honor, if that's said. Does the 10% rule apply to the pure liquor or packaged store as opposed to the souvenir store? In other words It applies to any place with packaged liquor. Huh? It applies to any place with packaged liquor. So in Albertsons, a grocery store that had packaged liquor license, they can't have more than 10% of their floor space either. Or just a regular liquor store, or just something that only sells liquor. A liquor store is different. They have more than just a packaged liquor license. They're allowed to have 100% of their floor space. Well, I know, but I mean, they sell liquor. That's their specialty. Right. Okay. And you have a souvenir store and they sell liquor and you limit them to having 10%. Okay? So you're worried about people supposedly, you're worried about people drinking out on the mall. And so a liquor store, which only sells liquor, can advertise their prices and say best deal in town, blah, blah, blah, 100%, promote liquor sales. But a souvenir store who sells other stuff, they can  you know, I don't see a correlation between, oh, we want to stop it and the way we're going to do it is we're going to limit their advertising and you take somebody that only sells liquor and you let them advertise all over the window and you tell somebody that doesn't sell liquor and you can only send 10% and we're going to reduce it by only hitting the people that sell a small amount of liquor or that liquor isn't  to cover the entire amount of their business. With due respect to the court, those liquor stores aren't on Fremont Street, they're not on a pedestrian mall. Oh, they're not on that? No, this is a very unique area of Las Vegas. There's a canopy that covers about four or five blocks of the street, and it's a big pedestrian mall. So those are those little side streets? I know perhaps they sell other things, but I thought that there were some package stores right off of Fremont Street. We'd be going outside the record, but to my knowledge there are no package liquor stores. So what's the rationale between floor space and the percentage of advertisement? Isn't that just sort of a made-up statistic? Wouldn't the more realistic statistic be the gross revenue generated by the product? That's one way to measure it. The city chose floor space. We could have chosen many other methods, but I think that in the case of the advertising what we thought was we did not want to prohibit individuals from advertising that liquor is available on premises. What we wanted to prohibit was these individual businesses from holding themselves out as liquor stores enticing people to come in and buy cheap very high octane liquor because that contributes to the problem on the street. Is there a difference between the type of alcohol or the type of beverage that they're more likely to sell as opposed to the other stores? There is. There's a type of beer called a souvenir store. Is there a difference between the type of beer that they're likely to sell as opposed to the type of beverage that they're likely to
judges: Thomas, Benavides, Owens